IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MILLICENT WRIGHT,

     Plaintiff,

v.                                                        CIVIL ACTION NO.
                                                         1:17-CV-975-ODE-LTW

ATLANTA PUBLIC SCHOOLS and
ISIS MANBOARD,

     Defendants.

## MAGISTRATE JUDGE'S NON-FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants Atlanta Public Schools and Isis Manboard's (together "Defendants") Pre-Answer Motion to Dismiss. (Doc. 2). For the reasons outlined below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**. (Doc. 2). All of Plaintiff's claims against Defendant Manboard be **DISMISSED**. All of Plaintiff's claims against Defendant Atlanta Public Schools, except Plaintiff's ADEA claim, should also be **DISMISSED**.

## DEFENDANTS' MOTION TO DISMISS

## I.    BACKGROUND

Plaintiff Millicent Wright ("Plaintiff") filed this lawsuit on February 6, 2017, in the Superior Court of Fulton County, Georgia. (Doc. 1-1). On March 16, 2017,

Defendants removed the case to this Court.  (Doc. 1).  In Plaintiff's Complaint, she argues Defendants discriminated against her due to her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") when they terminated her from her substitute teacher position. (Compl. ¶ 17).  Plaintiff also claims Defendants violated 42 U.S.C. § 1983 because they failed to afford her constitutionally required due process by terminating her based on unsubstantiated allegations.  (Compl. ¶ 25).  Plaintiff also asserts claims for libel, slander, and intentional infliction of emotional distress.  (Compl. ¶ 27-32).

In Plaintiff's Complaint, she alleges that from 1960 through 1996, she served as a teacher and an administrator with the Atlanta Public Schools ("APS").  (Compl. ¶ 6). After retiring in 1996, Plaintiff, age seventy-nine, began substitute teaching with APS and began a long-term substitute teaching assignment at Adamsville Elementary School in about January 2016.  (Compl.  ¶ 7-8).  On about February 4, 2016, Defendant Isis Manboard, the principal at Adamsville Elementary School, terminated Plaintiff because Plaintiff allegedly "pinched a child's ear," an accusation that was later changed to "paddling" a child.  (Compl. ¶¶ 5, 10).  Plaintiff denied the allegations and requested after termination that APS investigate the alleged incident and restore her good name as an educator.  (Compl. ¶ 12).  After termination, Plaintiff alleges Defendants determined that the allegations of pinching or paddling were false but did not recant them.  (Compl. 13).  Plaintiff avers that she timely filed a notice with the Equal Employment Opportunity Commission (EEOC).  (Compl. ¶ 18).

AO 72A
(Rev.8/82)

Defendants argue Plaintiff's claims against Defendant Isis Manboard in Manboard's official capacity should be dismissed because they are redundant with Plaintiff's claims against APS. (Def.'s Br. 4-5). Defendants contend that to the extent that Plaintiff asserts her ADEA claim against Defendant Manboard in her individual capacity, her ADEA claim should be dismissed because she is not, as an individual, an employer within the meaning of the ADEA and therefore, cannot be held individually liable for ADEA violations. (Def.'s Br. 6-7). Defendants also argue Plaintiff failed to sufficiently allege that she exhausted her administrative remedies. (Def.'s Br. 6). Defendants further contend that(1) Plaintiff's Section 1983 claims fail because she cannot show that she had a property interest in her continued employment or that her Constitutional injuries stemmed from a custom, policy, or practice; (2) Plaintiff's state law tort claims against APS are barred by sovereign immunity; (3) Plaintiff's intentional infliction of emotional distress claim fails because Plaintiff does not allege extreme and outrageous behavior; (4) Plaintiff's defamation claims fail because they are time-barred and she fails to plead facts supporting the required elements of her claim, such as whether or not Defendants published defamatory statements about her; (5) Plaintiff's Section 1983 claim against Defendant Manboard fails because Manboard is entitled to qualified immunity; (6) Plaintiff's state law tort claims against Defendant Manboard should be dismissed because Manboard is entitled to official immunity; and (7)

3

Plaintiff's claim for punitive damages should be dismissed because punitive damages are not available against a government entity.

## II.   **LEGAL ANALYSIS**

### A.   **Motion to Dismiss Standard**

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

4

**B.**   **Plaintiff's ADEA Claims**

Plaintiff alleges Defendants Manboard and APS discriminated against her on the basis of her age when they terminated her from her substitute teaching position in violation of the ADEA.   (Compl. ¶ 17); 29 U.S.C. §§ 621-634.   Plaintiff alleges Defendants leveled shifting, pretextual allegations against her, first accusing her of pinching a child's ear and then later accusing her of paddling a child in an effort to justify their decision. (Compl. ¶ 15).   Defendants argue Plaintiff's ADEA claims against Defendant Manboard in her official capacity should be dismissed because they are redundant with her claims against Defendant APS.   Defendants contend that Plaintiff's claims against Manboard in her individual capacity should also be dismissed because individuals are not amenable to suit under the ADEA.   Defendants further argue that Plaintiff's ADEA claims against both Defendants should be dismissed because she fails to allege facts tending to show that she timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

1.   Plaintiff's ADEA Claim Against Manboard in Her Individual Capacity Should Be Dismissed

Defendants argue Plaintiff's ADEA claim against Defendant Manboard in her individual capacity should be dismissed because she is not an "employer" and therefore, not subject to liability under the ADEA.   The ADEA limits civil liability to employers and not individual supervisors under the act.   Tobar v. Fed. Defenders Middle Dist. of Ga., 618 F. App'x 982, 985 n.2 (11th Cir. 2015); Shuler v. Bd. of Tr. of Univ. of Ala., 480 F. App'x 540, 543 (11th Cir. 2012); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir.

1995) (holding no individual liability under the ADEA).  Because Defendant Manboard cannot be held individually liable under the Act, Plaintiff's ADEA claims against her should be **DISMISSED**.[1]

### 2.  Plaintiff's ADEA Claims Against Manboard in Her Official Capacity Must Also Be Dismissed

Additionally, any ADEA claims filed against Manboard in her official capacity should also be dismissed.  Plaintiff concedes that official capacity suits brought against a municipal employee are dismissed when there is also a suit against the municipality because they are redundant.  (Pl.'s Br. 4-5).  Indeed, Plaintiff denies in her brief that allegations were brought against Defendant Manboard in her official capacity.  (Pl.'s Br. 4-5).  Thus, Plaintiff abandoned any ADEA claims against Defendant Manboard in her official capacity, and therefore, they should be **DISMISSED**.  Ownbey Enters., Inc. v. Wachovia Bank, N.A., 457 F. Supp. 2d 1341, 1353 (N.D. Ga. 2006).

### 3.  Plaintiff's ADEA Claims Against APS

Defendants argue that Plaintiff's ADEA claims should be dismissed because she fails to allege facts tending to show that she timely filed a charge with the EEOC.  Defendants further argue Plaintiff failed to allege sufficient facts in her Complaint describing further the contents of her EEOC charge.  (Def.'s Br. 6).  To litigate a claim under Title VII or the ADEA, a plaintiff must first exhaust all administrative remedies.  Jones v. Dillard's Inc., 331 F.3d 1259, 1263 (11th Cir. 2003); McBrayer v. City of

---

[1] Plaintiff concedes that Defendant Manboard is not an employer as defined by the ADEA.  (Pl.'s Br. 5, 8).

Marietta, 967 F.2d 546, 547 (11th Cir. 1992) (filing of timely charge of discrimination prerequisite under the ADEA). Prior to filing an ADEA claim, a plaintiff in Georgia must first file a charge of discrimination with the EEOC within 180 days after the alleged unlawful practice occurred. 29 U.S.C.A. § 626(d); Sheffield v. United Parcel Serv., Inc., 403 F. App'x 452, 454 n.2 (11th Cir. 2010); Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003); Jones, 331 F.3d at 1263. The purpose of the exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004); see also Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to [ensure] that the settlement of grievances be first attempted through the office of the EEOC.") (internal quotation and citation omitted); see also Scott v. Rite Aid of Georgia, Inc., No. 7:11-CV-180 HL, 2012 WL 1409326, at *2 (M.D. Ga. Apr. 23, 2012).

Here, Plaintiff alleges in her Complaint that she timely filed her notice of what she perceived to be unlawful discrimination with the EEOC. (Compl. ¶ 18). In response to Defendants' Motion to Dismiss, Plaintiff alleged that she filed her EEOC charge on May 25, 2016, via certified mail. (Pl.'s Br. 5). Plaintiff also indicated that she was attaching her EEOC Charge as Exhibit A. (Pl.'s Br. 5 n.5). Plaintiff did not attach her EEOC Charge to her Response. On February 14, 2017, Plaintiff filed her Exhibit A with the

Court.  (Doc. 6).  Plaintiff's Exhibit A is a letter, dated May 25, 2016, which was addressed to the EEOC.  (Doc. 6).  The letter stated as follows:

> To Whom It May Concern:
>
> This correspondence is to initiate a claim of age discrimination against the Atlanta Public School System.  I was initially employed by the Atlanta Public School System in 1959 as a school teacher.  I retired from the system in 1995.  At the time of my retirement I was an administrator and had obtained a doctorate degree in education. After retiring I began supply teaching and regularly took long term assignments of special needs classes.  In January of 2016, I was asked to take a long term assignment of a special needs class at Adamsville Elementary School, which I gladly accepted.  I began work after the Christmas holiday.  On February 4, 2016, I received a telephone call from the principal, Dr. Manboard informing me that I was relieved from my responsibilities at the school because an allegation had been made that I pinched a child's ear.  I explained that the allegation was false and requested an investigation to clear my name and reputation to be conducted.   I also requested reinstatement of my assignment.  As of the writing of this correspondence I have not received any correspondence from the administration or the principal of the school. I have been informed through other sources that the principal determined the allegations leveled against me were untrue and were directed [at] an aide who has the identical last name, Wright. . . . The actions of the school system were aimed at removing me from my position with the intention of not reinstating me to the same because of my age.  In my fifty-six years as an educator I have never been accused of mistreating a child.  The principal used the situation to terminate my employment and deny reinstatement even after she had been informed that the allegation was misdirected and the wrong Wright had been identified.  It is clear that the school system used this incident as a pretext for terminating my employment because of my age. . . .

(Doc. 6, at 4-5).  The letter appeared to be signed by Plaintiff.  (Id.).  The regulations for the ADEA indicate that a charge of discrimination "shall mean a statement filed with the [EEOC] by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in . . . actions which violate the [ADEA]."  29 C.F.R. § 1626.3.

The charge must be in writing, must name the prospective respondent, and shall generally allege the discriminatory acts.  29 C.F.R. § 1626.6.  In addition, "the filing must demonstrate an individual's intent to have the agency initiate its investigatory and conciliatory processes."  Fed. Express Corp. v. Holowecki, 552 U.S. 389, 401-02 (2008).  It is certainly plausible that the letter Plaintiff provides as Exhibit A satisfies the requirements for a charge as set forth in the regulations.  The letter is in writing, names Defendant APS, and just as in the Complaint, alleges that Defendant APS discriminated against her on the basis of her age when it terminated her.  In addition, it is also plausible that Plaintiff's written correspondence with the EEOC was intended  to have the agency initiate its investigatory and conciliatory processes because she extensively describes the circumstances and her belief that her termination occurred due to age discrimination, she indicates that she is "initiat[ing] a claim of age discrimination against the Atlanta Public School System" and provides APS's address.  (Doc. 6, at 4-5).  Plaintiff also thanks the EEOC for its assistance.  (Id.); see, e.g., EEOC v. Joe Ryan Enters., No. 3:11-CV-0795-MEF, 2013 WL 1294696, at *4 (M.D. Ala. Mar. 28, 2013) (finding that letter from plaintiff was a charge where she alleged she was subjected to a hostile work environment and constructively discharged and requested that a complaint or charge be filed); Anderson v. Brown Indus., No. 4:11-CV-0225-HLM-WEJ, 2012 WL 12501083, at *17 (N.D. Ga. Nov. 5, 2012) (concluding that plaintiff's letter constituted a charge where letter described circumstances similar to the plaintiff's complaint, enclosed affidavit signed and notarized by plaintiff, and included exhibits with relevant background

information); Davis v. Montgomery Cty. Dep't. of. Transp., No. JFM-11-2637, 2012 WL 748392, at *4 (D. Md. Mar. 6, 2012) (explaining that where the plaintiff sent letter and completed intake questionnaire to EEOC in which the plaintiff stated she was filing a grievance for wrongful termination due to her disability, and the plaintiff provided her employer's name, details about her disability, as well as the names of witnesses to the incidents).   Although matters outside the pleadings are not considered on a motion to dismiss, the Eleventh Circuit has advised that when the plaintiff refers to documents in the complaint which are central to the plaintiff's claim and the documents' authenticity have not been questioned, the court may consider the documents.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (holding that court may review AP News article attached to amended answer as part of motion to dismiss); Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) (court may review document attached to motion to dismiss if the document is central to the complaint and its contents are not disputed).  Courts have easily concluded that EEOC charges are properly considered on the motion to dismiss because they are central to Plaintiff's cause of action given that the filing of an EEOC charge is a condition precedent to filing a Title VII claim.  See 42 U.S.C. § 2000e-5; Chestnut v. Ethan Allen Retail, Inc., 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013) (noting that EEOC charges are routinely considered in connection with a motion to dismiss even when they are not attached to a pleading); Roberts v. Fulton Cty. Ry., LLC, No. 1:07-CV-2416-TWT, 2008 WL 542680, at *3 (N.D. Ga. Feb. 22, 2008) (reviewing EEOC charge attached to defendant's motion in connection with motion to

dismiss). Because Plaintiff did not attach her letter to the EEOC to her Complaint or to her original response to Defendants' Motion to Dismiss, Defendants have not had an opportunity to challenge its authenticity. Nevertheless, it is not in the interest of justice in this case to grant Defendant's Motion simply because the letter is a matter outside the pleading. Based on the evidence Plaintiff has submitted, it is plausible that Plaintiff filed a timely EEOC Charge. Plaintiff alleged in her Complaint that she was terminated on February 4, 2016. (Compl. ¶ 10). Plaintiff maintains that she filed her "EEOC claim" on May 25, 2016. (Pl.'s Br. 5; Doc. 6, at 4). The substance of Plaintiff's alleged letter to the EEOC clearly relates to the subject of the suit. While this Court could convert Defendants' Motion to a Motion for Summary Judgment to allow consideration of Plaintiff's alleged charge, the Court declines to do so at this time because it is too early in the proceedings to have a fully developed record on the matter. Accordingly, Defendants' Motion to Dismiss should be **DENIED** at this juncture. Plaintiff is **DIRECTED** to amend her Complaint within fourteen (14) days from the date of entry of the instant Report and Recommendation in order to identify her Exhibit (Doc. 6), explain when she sent it to the EEOC, and to attach it to her Amended Complaint.

### C.  <u>Plaintiff's Section 1983 Claim Should Be Dismissed Because She Fails to Allege that She Suffered a Deprivation of a Property Interest</u>

Plaintiff also claims that Defendants violated 42 U.S.C. § 1983 because they failed to afford her constitutionally required due process by terminating her based on unsubstantiated allegations without holding a hearing. (Compl. ¶ 25). Defendants contend that Plaintiff's Section 1983 claim fails because she does not allege facts

showing that Defendants deprived her of a property interest.  While Plaintiff generally responds that she had a property interest in continued employment as a substitute teacher and her professional reputation, Plaintiff does not present any authority or specific argument supporting the proposition.

Plaintiff has not sufficiently alleged that Defendants deprived her of a property interest.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  In order for Plaintiff to state a violation of her due process rights under § 1983 she must allege facts plausibly suggesting (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). "Due process entitles an individual to notice and some form of hearing before state action may finally deprive him or her of a property interest."  Id. (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

"A public employee has a property interest in employment if existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement and this determination requires examination of relevant state law." LaFleur v. Hugine, 587 F. App'x 536, 541 (11th Cir. 2014); Epps v. Watson,

492 F.3d 1240, 1246 (11th Cir. 2007).  An interest in continued employment may arise if "a state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." LaFleur, 587 F. App'x at 541; Epps, 492 F.3d at1246.

Thus, the Court turns to Georgia law in order to determine whether Plaintiff had a property interest in her position as a substitute teacher.  Georgia law restricts the authority of an appointing authority to dismiss (1) teachers who have a contract for a definite term or (2) tenured teachers who have a current employment contract. O.C.G.A. §§ 20-2-940(a), 20-2-942(b)(1); Brewer v. Purvis, 816 F. Supp. 1560, 1572 (M.D. Ga. Mar. 10, 1993) (explaining that the protections of O.C.G.A. § 20-2-940 are triggered for teachers with a contract of employment).  Under Georgia law, a teacher has tenure if he or she has accepted a school year contract for the fourth consecutive year from the same local board of education.  O.C.G.A. §§ 20-2-940(a), 20-2-942(b)(1).  Tenured teachers who are serving under an employment contract and teachers who have a contract for a definite term may only be dismissed for good cause, incompetency, insubordination, willful neglect of duties, immorality, inciting students to violate the law, reductions in force, and failure to maintain necessary educational training.  O.C.G.A. § 20-2-940(a); Hatcher v. Bd. of Pub. Educ. and Orphanage for Bibb Cty., 809 F.2d 1546, 1550-52 (11th Cir. 1987); Clayton Cty. Bd. of Educ. v. Wilmer, 325 Ga. App. 637, 638 (2014) (explaining that a local board may demote or fail to renew the contract of a tenured teacher only for cause and after providing specified procedural safeguards); King v. Worth Cty. Bd. of Educ., 324 Ga. App. 208, 209 n.2 (2013).  Additionally, Georgia law

requires a local school board to give written notice of a decision to discharge the teacher ten days before the discharge of the teacher.  O.C.G.A. § 20-2-940(b).  Teachers who receive such written notice are entitled to a hearing.  O.C.G.A. § 20-2-940(e); Mason v. Clayton Cty. Bd. of Educ., 334 F. App'x 191, 193 (11th Cir. 2009).   Accordingly, tenured teachers under contract or teachers who have contracted for a definite term have a property interest in their continued employment.  See Hinson v. Clinch Cty. Ga. Bd. of Educ., 231 F.3d 821, 832-33 (11th Cir. 2000); Hatcher, 809 F.2d at 1550; Dockens v. DeKalb Cty. Sch. Sys., No. 1:07-CV-1345-CAP/AJB , 2010 WL 11505568, at *21 (N.D. Ga. July 19, 2010); Siler v. Hancock Cty. Bd. of Educ., 510 F. Supp. 2d 1362, 1378 (M.D. Ga. Mar. 27, 2007).   Thus, if Plaintiff had tenure and an employment contract at the time of her termination or had a contract for a definite term, she would have a property interest in her continued employment.

Plaintiff, however, does not allege that she had an employment contract at the time of her termination.   Nor does Plaintiff allege that she had tenure when she was terminated.  Plaintiff asserts that she served as a teacher and an administrator with APS from 1960 through 1996, and after her retirement, began substitute teaching with APS. (Compl. ¶ 6).  While it is possible that Plaintiff obtained her tenure during the period of 1960 through 1996, Plaintiff does not present any authority for the proposition that she retained it after she retired and was subsequently re-employed by APS as a substitute teacher.   Additionally, Plaintiff does not allege any facts tending to show that she attained her tenure after she retired by accepting a school year contract for the fourth

14

consecutive year from the same local board of education when she accepted her substitute teaching position.  Furthermore, Plaintiff has not alleged any facts tending to show that she had an employment contract for her substitute teaching assignment or that the contract involved a contract for a definite term.  Thus, Plaintiff's Complaint does not include sufficient facts tending to show that she had a property interest in her substitute teaching position at APS.

Plaintiff asserts in her brief that she also had a property interest in her professional reputation and that "[a]fter the false allegations [that Plaintiff either pinched a child's ear or paddled a child] were made APS intentionally and continually thwarted Plaintiff's ability to work as a substitute teacher in any APS school by deliberately and intentionally disparaging her name in the Aesop," the substitute management system for APS.  Plaintiff's Complaint, however, neither mentioned disparaging information in the Aesop system, nor argued that the breach of a legal duty claim stemmed from harm to Plaintiff's reputation based on the disparaging information in the Aesop system.  Plaintiff may not amend her complaint via her response to Defendants' Motion to Dismiss.  Mitchell v. Thompson, 564 F. App'x 452, 458 (11th Cir. 2014) (cannot raise new allegations not included in complaint in response to motion to dismiss); Ivey v. First Quality Retail Serv., 490 F. App'x 281, 287 (11th Cir. 2012) (holding that district court properly declined to address claim asserted in response to summary judgment motion because claim was not included in complaint); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009); Henderson v. Henry Cty., No. 1:16-CV-3292-AT, 2017

WL 4475927, at *4 n.4 (N.D. Ga. June 18, 2017).

Additionally, this Court is not inclined to allow Plaintiff an opportunity to amend her Complaint to attempt to state such a claim based on the facts she alleged in the brief. An injury to reputation by itself is not sufficient to "constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005). Stated differently, in order to invoke the procedural protections of the Due Process Clause, a plaintiff would need to establish more than a mere defamation claim. Behrens, 422 F.3d at 1259. Such a plaintiff would need to establish the fact of the defamation plus the violation of some more tangible interest. Behrens, 422 F.3d at 1260. To establish such a tangible interest, the plaintiff would have to show that the state action had significantly altered or extinguished a right or status previously recognized by state law. Behrens, 422 F.3d at 1260; see also Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436-37 (11th Cir. 1998) (holding that "[t]his rule, labeled the 'stigma-plus' standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation."). Plaintiff's Complaint and the allegations in her brief fall short of plausibly suggesting that the alleged faulty information on the Aesop system deprived her of a recognized property or liberty interest in addition to her reputation. Plaintiff does not point the Court to any other recognized property or liberty interest to pair with the alleged injury to Plaintiff's reputation. Accordingly, Plaintiff's Section 1983 claim for "breach of a legal duty"

should be **DISMISSED**.

      **C.**    **Plaintiff's State Law Tort Claims Against APS Are Barred by Sovereign Immunity**

Defendants contend that Plaintiff's claims for libel, slander, and intentional infliction of emotional distress are barred by sovereign immunity. In response, Plaintiff concedes that the Georgia Tort Claims Act provides for a limited waiver of sovereign immunity for its officials and employees, but school districts and counties are excluded form the waiver. (Pl.'s Br. 7-8). Accordingly, Plaintiff's tort claims for libel, slander, and intentional infliction of emotional distress asserted against APS should be **DISMISSED**.

      **D.**    **Plaintiff's Intentional Infliction of Emotional Distress Claim Against Manboard Should Be Dismissed**

Plaintiff contends that unspecified conduct by Defendant Manboard amounted to intentional infliction of emotional distress. (Compl. ¶¶ 31-32). Defendants argue Plaintiff's intentional infliction of emotional distress claim fails because she does not allege extreme or outrageous conduct. To the extent that Plaintiff is claiming that Defendant Manboard's conduct in terminating her for conduct that she did not do and refusing to recant the alleged false allegations which led to her termination, Plaintiff fails to state a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress under Georgia law, the plaintiff must show that the conduct was intentional or reckless; the conduct was extreme and outrageous; there is a causal connection between the conduct and the

AO 72A
(Rev.8/82)

emotional distress; and that the emotional distress is severe. <u>Turnage v. Kasper</u>, 307 Ga. App. 172, 183 (2010). For a defendant's conduct to be extreme and outrageous, it must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Johnson v. Allen</u>, 272 Ga. App. 861, 865 (2005); <u>Turnbull v. Northside Hosp., Inc.</u>, 220 Ga. App. 883, 884 (1996); <u>Moses v. Prudential Ins. Co. of Am.</u>, 187 Ga. App. 222, 224 (1988). In this regard, courts have found that "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." <u>Phinazee v. Interstate Nationalease, Inc.</u>, 237 Ga. App. 39, 39-40 (1999). Generally, Georgia law does not consider adverse employment actions "extreme or outrageous." For example, an employer's "responsibilities to oversee the workplace and the employee's obligations to perform her duties [does not make the termination of an employee, for whatever reason, no matter how harsh or insensitive] so extreme as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Clark v. Coats & Clark, Inc.</u>, 990 F.2d 1217, 1229 (11th Cir. 1993) ("Georgia courts have held that an employer's termination of an employee-however stressful to the employee-generally is not extreme and outrageous conduct"); <u>Beck v. Interstate Brands Corp.</u>, 953 F.2d 1275, 1276 (11th Cir. 1992) ("Even if the employee is not terminable at will, discharge for an improper reason does

not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based."); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1331 (N.D. Ga. 2009); Perri v. Cingular Wireless, LLC, 397 F. Supp. 2d 1364, 1381-82 (N.D. Ga. 2005) (holding that alleged harassing conduct and termination was not sufficiently outrageous to constitute intentional infliction of emotional distress); Jarrard v. United Parcel Serv., 242 Ga. App. 58, 59-60 (2000).  Likewise, false accusations by an employer leading to the employee's termination do not rise to the level of extreme outrage required to establish the tort under Georgia law.  Harris v. Pierce Cty., No. CV 513-82, 2014 WL 3974668, at *18-19 (S.D. Ga. Aug. 14, 2014) (holding that employer's false accusations that employee was doing job improperly, repeating such allegations to the press, and termination of employee was not enough to amount to extreme and outrageous behavior); Scott v. Shoe Show, Inc., No. 1:12-CV-3286-TWT-RGV, 2013 WL 1624286, at *4 (N.D. Ga. Mar. 13, 2013) (explaining that terminated employee did not state a claim for intentional infliction of emotional distress where employer falsely accused her of theft, continued to question her about store thefts even when she became visibly upset, coerced her into writing a false confession, and terminated her); Palmer v. Stewart Cty. Sch. Dist., No. 4:04-CV-21 (CDL), 2005 WL 1676701, at *16 (M.D. Ga. June 17, 2005) (holding that employer's conduct was not sufficiently outrageous where employer terminated plaintiff's employment, falsely accused her of stealing from the company, caused her to "endure a humiliating battle to receive her unemployment benefits," and falsely charged her with computer theft, which

led to her arrest); <u>Bd. of Pub. Safety v. Jordan</u>, 252 Ga. App. 577, 582 (2001) (finding that board accused of "fabricating cause" to justify public official's termination, tipping television news reporter about public official's alleged fiscal irresponsibility during a state-wide budgetary crisis, and denying him involuntary separation retirement benefits was not sufficiently extreme and outrageous); <u>ComSouth Teleservs. v. Liggett</u>, 243 Ga. App. 446, 447 (2000) (rejecting emotional distress claim where employer allegedly intentionally represented to Department of Labor that plaintiff was terminated for cause to prevent her from receiving unemployment benefits, misrepresented her termination date in an effort to prevent her from collecting medical benefits (which the company subsequently paid), and portrayed her as a bad employee); <u>Lively v. McDaniel</u>, 240 Ga. App. 132, 134 (1999) (noting that false, defamatory statements that employee had stole and retained important documents belonging to the company are classic examples of conduct that, though harmful to the plaintiff, are not actionable as intentional infliction of emotional distress).   Because Plaintiff does not allege extreme and outrageous conduct by Defendant Manboard, Plaintiff's intentional infliction of emotional distress claim should be **DISMISSED**.

> **E.**   <u>**Plaintiff's Defamation Claims**</u>

Plaintiff contends that Defendant Manboard defamed her by publishing "in print, writing, pictures, and/or signs the facts and circumstances surrounding the unsubstantiated discharge of the Plaintiff."  (Compl. ¶ 28).  Plaintiff further contends that Manboard slandered her when she "made charges against Plaintiff in reference to

20

her profession, calculated to injure her," and "imputed a crime punishable by law to Plaintiff." (Compl. ¶ 30). Defendants contend that Plaintiff's libel and slander claims should be dismissed because she does not plead essential elements of the claim. In support, Defendants point out that Plaintiff does not plead facts tending to show that there was a publication of the defamatory matter and she does not indicate with whom Manboard discussed the offending matter, or when, where, or how the discussions occurred. Defendants further point out that Plaintiff appears to only allege communication made by Manboard to other employees of APS, and as a matter of law, such communications are not publication.

A viable defamation claim under Georgia law consists of (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the "actionability of the statement irrespective of special harm." <u>Saye v. Deloitte & Touche, LLP</u>, 295 Ga. App. 128, 129-30 (2008). Plaintiff's Complaint does not sufficiently state a defamation claim. In order to establish a defamation claim, the plaintiff must prove that the challenged statements were published. <u>Kimball v. Better Bus. Bureau of W. Fla.</u>, 613 F. App'x 821, 824 (11th Cir. 2015). Publication means communicating the defamatory statement to anyone other than the person allegedly being defamed. <u>Id.</u> at 133; <u>Scouten v. Amerisave Mortg. Corp.</u>, 283 Ga. 72 (2008) (explaining that in order to set forth a slander claim, one must prove the publication of the slander, which occurs when the slander is communicated to anyone other than the

person slandered); see also Kimball, 613 F. App'x at 824. Here, with respect to communications by Manboard, Plaintiff alleges no facts concerning what specifically was communicated or to whom the communications were made.

To the extent that the alleged communications at issue were made by Manboard to another employee of APS, Plaintiff likewise fails to present sufficient facts plausibly suggesting publication. Intracorporate communications are excluded from the definition of publication. Kimball, 613 F. App'x at 824; Scouten, 283 Ga. at 72 (explaining that intracorporate exception applies to slander as well). A corporation is not held responsible for defamation if the slanderous or libelous material was communicated from one corporate agent to another who has reason to receive the information because of her duty or authority. Stringfield v. IAP World Servs., 784 F. Supp. 2d 1378, 1384 (S.D. Ga. 2011); Saye v. Deloitte & Touche, LLP, 295 Ga. App. 128, 133 (2008); Kitchen Hardware, Ltd. v. Kuehne & Nagel, Inc., 205 Ga. App. 94, 96-97 (1992) ("It is well settled that a communication made by one corporate agent to another is not publication in the legal sense"). This exception is based on the notion that "statements by either in the hearing of the other concerning such matters are the legal equivalent of speaking only to one's self." Kurtz v. Williams, 188 Ga. App. 14, 15 (1988). The intracorporate communications exception is pertinent to the publication element of a defamation claim and not a affirmative defense. Agee v. Huggins, 888 F. Supp. 1573, 1580 n.8 (N.D. Ga. 1995); Kurtz, 188 Ga. App. at 15. Because Plaintiff's Complaint does not contain any facts plausibly suggesting publication, she fails to state a claim for

22

defamation.  Accordingly, Plaintiff's defamation claims against Defendant Manboard should be **DISMISSED**.

### F.    <u>Punitive Damages</u>

Plaintiff contends that punitive damages should be assessed against the Defendants.  Defendants contend that punitive damages may not be assessed against a government entity.   If the District Judge were to adopt this Court's report and recommendation, the only claim remaining in the lawsuit would be Plaintiff's ADEA claim against Defendant APS.  Punitive damages are not recoverable under the ADEA. <u>Snapp v. Unlimited Concepts, Inc.</u>, 208 F.3d 928, 938 (11th Cir. 2000) (rejecting argument that punitive damages were available for retaliatory discharge claim under the Fair Labor Standards Act after considering the fact that damages under the Act were the same as those under the ADEA); <u>Goldstein v. Manhattan Indus., Inc.</u>, 758 F.2d 1435, 1446 (11th Cir. 1985); <u>Kharod v. City of Atlanta</u>, No. 1:11-CV-01104-CC-AJB, 2011 WL 13096503, at *6 (N.D. Ga. June 27, 2011); <u>Canty v. Fry's Elecs., Inc.</u>, 736 F. Supp. 2d 1352, 1380 (N.D. Ga. 2010) (explaining that liquidated damages are permitted under the ADEA but not punitive damages).  Accordingly, Plaintiff's claim for punitive damages pursuant to the ADEA should be **DISMISSED**.

### <u>CONCLUSION</u>

Based on the foregoing reasons, **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.  (Doc. 2).  All of Plaintiff's claims against Defendant Manboard should be **DISMISSED**.  All Plaintiff's

claims against Defendant APS, except Plaintiff's ADEA claim, should also be **DISMISSED**.

   **SO REPORTED AND RECOMMENDED**, this  15  day of February, 2018.

       /s/ Linda T. Walker_____
       LINDA T. WALKER
       UNITED STATES MAGISTRATE JUDGE

24